IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **GRAHAM SPRINGS LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**ZAZZLE INC.**<br><br>    Defendant. | LEAD CASE NO. 2:15-CV-775-JRG-RSP |
| **GRAHAM SPRINGS LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**PROVIDE COMMERCE, INC. D/B/A PERSONAL CREATIONS,**<br><br>    Defendant. | CASE NO. 2:15-CV-793-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 11**

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 2

III. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ............................ 4

IV. THE APPLICABLE LEGAL STANDARDS ..................................................................... 5

    A. The Rule 11 Standard ................................................................................................ 5

    B. Available Sanctions Under Rule 11 .......................................................................... 7

V. THE COURT SHOULD IMPOSE RULE 11 SANCTIONS AGAINST PLAINTIFF ....................................................................................................................... 8

    A. Sanctions Should Be Imposed Because Plaintiff Filed and Served The Complaint Containing Infringement Allegations That Are Objectively Unreasonable ............................................................................................................. 8

    B. Sanctions Should Be Imposed Because Plaintiff Served The Complaint When It Objectively Should Have Known That The Patent-In-Suit Is Invalid ........................................................................................................................ 10

        1. The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid In View Of The Williams Article ..................................... 10

        2. The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid In View Of The Adobe Paper ........................................... 11

        3. The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid In View Of The Isle Patent ............................................... 12

        4. The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid Due To Claiming Non-Statutory Subject Matter .............. 13

VI. CONCLUSION .................................................................................................................. 14

4843-4035-5110.2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. v. CLS Bank*,
  134 S. Ct. 2347 (2014) .................................................................................................. 4, 13, 14

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) .................................................................................................. 13

*Carman v. Treat*,
  7 F.3d 1379 (8th Cir. 1993) .......................................................................................................... 7

*Commil USA, LLC v. Cisco Systems, Inc.*,
  -- U.S. --, 135 S. Ct. 1920 (2014) ................................................................................... 1, 5, 8, 14

*Divane v. Krull Elec. Co.*,
  319 F.3d 307 (7th Cir. 2003) ........................................................................................................ 7

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) (KENNEDY, J.,
  concurring) .................................................................................................................................... 5

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ............................................................................................. 6, 7, 9

*Gaskell v. Weir*,
  10 F.3d 626 (9th Cir. 1993) .......................................................................................................... 7

*Gottschalk v. Benson*,
  409 U.S. 17 ................................................................................................................................. 14

*Hughes v. Novi American, Inc.*,
  724 F.2d 122 (Fed. Cir. 1984) ...................................................................................................... 6

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
  2011 U.S. Dist. LEXIS 66745 (E.D. Wis. June 22, 2011) ............................................................ 6

*Marina Mgmt. Servs. v. Vessel My Girls*,
  202 F.3d 315 (D.C. Cir. 2000) ...................................................................................................... 7

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ...................................................................................................... 6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  -- U.S. --, 134 S. Ct. 1749 (2014) ................................................................................................. 5

*Raylon, LLC v. Complus Data Innovations, Inc.*,
   700 F.3d 1361 (Fed. Cir. 2012)......................................................................................6, 7, 8

*Rhinehart v. Stauffer*,
   638 F.2d 1169 (9th Cir. 1979) ...................................................................................................7

*Tayr Kilaab Al Ghashiyah v. Frank*,
   2008 U.S. Dist. LEXIS 520 (E.D. Wis. Jan. 3, 2008)................................................................7

*Thermocycle Int'l, Inc. v. A. F. Hinrichsen Sales Corp.*,
   1991 U.S. Dist. LEXIS 8550 (S.D.N.Y. June 25, 1991) ............................................................6

*Ultra-Temp Corp. v Advanced Vacuum Sys.*,
   189 F.R.D. 17 (D. Mass. 1999)..................................................................................................9

**Statutes**

28 U.S.C. § 1927.................................................................................................................................5

35 U.S.C. § 101.....................................................................................................................4, 13, 14

35 U.S.C. § 154(c)(1)..........................................................................................................................2

35 U.S.C. § 285............................................................................................................................5, 14

**Other Authorities**

Discussion Draft of Patent Demand Letter Legislation before the Subcommittee
   on Commerce, Manufacturing, and Trade of the House Committee on Energy
   and Commerce 2 (2014)..........................................................................................................5

Randall R. Rader et al., Make Patent Trolls Pay in Court, The New York Times
   (June 4, 2013)...........................................................................................................................14

4843-4035-5110.2

**I.      INTRODUCTION**

Defendant Provide Commerce, Inc. hereby moves the Court for sanctions against Plaintiff Graham Springs LLC pursuant to Fed. R. Civ. P. 11, including dismissal of Plaintiff's Complaint and an award of Defendant's attorneys' fees.[1]  The Complaint alleges infringement of *expired* U.S. Patent No. 5,524,085 ("the '085 Patent").  Plaintiff filed its Complaint on May 18, 2015 (Dkt. No. 1) and let it sit almost two months before serving it on or about July 15, 2015.  In the interim, Defendant became aware of the Complaint and sent Plaintiff a letter on June 26, 2015 explaining in detail why the '085 Patent is invalid and had never been infringed by Defendant.  The letter reminded Plaintiff of its Rule 11 duty to "stop and think" before serving the Complaint and that service of the Complaint in view of the provided information would be a violation of Rule 11.  Plaintiff ignored the letter, however, and proceeded to serve the Complaint on Defendant.  When asked post-service for the basis of the allegations, Plaintiff's counsel's response was to state that he would "have to see if GS is willing to provide" that information, but that "GS is willing to settle this matter for a one-time payment of $55,000."

In view of the information concerning non-infringement and invalidity of the '085 Patent provided in the letter, it is clear that: (a) Plaintiff's counsel's signature on the original complaint was a violation of Rule 11 because no pre-filing investigation had been done; and (b) the maintaining of the infringement allegations by Plaintiff through the serving of the Complaint compounded the initial violation of Rule 11.  Stated differently, Plaintiff's conduct is objectively unreasonable and warrants Rule 11 sanctions.  It is likewise clear that the immediate demand for $55,000 shows that this lawsuit is nothing more than an attempt to "use patents to go after defendants for money, even when their claims are frivolous."  *Commil USA, LLC v. Cisco Systems, Inc.*, -- U.S. --, 135 S. Ct. 1920, 1930 (2014).  This case is a striking example of "the *in terrorem* power of patent trolls," *Id.* at 1931 (Scalia, J. dissenting) that should not be tolerated.

---

[1] Pursuant to Fed. R. Civ. P. 11(c)(2), a copy of this motion was served on Plaintiff under Fed. R. Civ. P. 5 on Aug. 7, 2015, and no response has been received from Plaintiff.  The 21 day time period under Rule 11(c)(2) has therefore expired with no response from Plaintiff.

Fed. R. Civ. P. 11(b) provides that an attorney who signs a pleading or later advocates for it certifies that a reasonable inquiry was conducted to determine that the pleading is non-frivolous, warranted under the law, and supported by facts. Courts have imposed Rule 11 sanctions where a plaintiff has sued on a patent that it knew or should have known to be invalid or not infringed. Rule 11 also authorizes a district court to dismiss a case in its entirety where the plaintiff has pursued unfounded claims. Finally, where, as here, the offending pleading is the complaint itself, the district court is also empowered to award the injured party all of its attorneys' fees incurred in defending the action.

## II. FACTUAL BACKGROUND

Plaintiff is a patent troll, formed as a limited liability company and registered on March 23, 2015, just a few weeks before its various cases were filed.[2] Declaration of William J. Robinson ("Robinson Decl."), Ex. 1. About a week later, on March 30, 2015, the '085 Patent was purportedly assigned to this non-practicing entity. Robinson Decl., Ex. 2. Plaintiff then filed 25 lawsuits relating to the '085 Patent on May 18, 2015, and filed another 13 lawsuits on June 1, 2015. Robinson Decl., Ex. 3. The '085 Patent expired on September 12, 2014,[3] so the initial complaints were not filed until more than 9 months *after* the expiration of the patent.

As noted, Plaintiff filed its Complaint against Defendant on May 18, 2015, alleging infringement of the '085 Patent. Dkt. No. 1. The Complaint was not served on Defendant, however, until July 15, 2015. Robinson Decl., Ex. 4. Before service of the Complaint, Defendant noticed the filing of the lawsuit and sent a sizeable letter to Plaintiff on June 26, 2015, which explained in detail that Defendant has never infringed the '085 Patent and that the '085 Patent is clearly invalid in view of a substantial amount of prior art and for claiming non-statutory subject

---

[2] Not surprisingly, the corporate address of Plaintiff is the same as for another troll that has clogged the docket of this District with its meritless cases: eDekka LLC.

[3] *See* 35 U.S.C. § 154(c)(1) (The expiration date of a patent filed before June 8, 1995 is the greater of 20 years from the date on which the application for the patent was filed or 17 years from grant.)

4843-4035-5110.2

matter.  Robinson Decl., Ex. 5.  Despite Defendant's warning in the letter that service of the Complaint in view of the information concerning non-infringement and invalidity provided in the letter would be a violation of Rule 11, Plaintiff continued to serve the Complaint on July 15, 2015, without even providing any response to the letter.  Robinson Decl., ¶ 10.

Regarding infringement, Plaintiff merely alleges in the Complaint as follows:

> 11. Defendant owns, uses, operates, advertises, controls, sells, and otherwise provides methods and/or systems that infringe the '085 patent.  The '085 patent provides, among other things, "*A method of processing data including a <u>page description language file</u>, comprising the steps of: providing in the page description language file a data string operable of a multimedia device; applying the data string to a multimedia device; and applying a portion of the data excluding the data string to a printing apparatus.*"  (Emphasis added).
>
> 12. Defendant directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or services that infringed one or more claims of the '085 patent in this district and elsewhere in the United States.  Particularly, Defendant made, used, provided, offered for sale, and sold their product and/or service entitled Personal Creations online printing interfaces ("Accused Instrumentality") which directly infringed the '085 patent.

The language quoted in paragraph 11 of the Complaint is from Claim 13 of the '085 Patent.  Dkt. No. 1, Exhibit A, Claim 13.  The Complaint only mentions "Personal Creations online printing interfaces" as being an accused instrumentality, but does not explain what that refers to or how Claim 13 of the '085 Patent in any way relates to that purported instrumentality.

In the letter to Plaintiff of June 26, 2015, Defendant explained in detail that it has not infringed any claim of the '085 Patent.  Robinson Decl., Ex. 5, p. 1.  In view of the quoting of Claim 13 of the '085 Patent in the Complaint, the letter also focused on Claim 13 and explained how Defendant has not provided any "page description language file" as required by the claim.  *Id*.  The patent concerns software interfaces for printers.  The accused "product" is not a printer at all but instead a website.

The letter also explained that in view of how Plaintiff asserted the claim, the claim was clearly invalid in view of numerous prior art references.  Indeed, a detailed invalidity analysis was provided in the letter for three of the prior art references.  *Id*. at pp. 2-4.  The letter further

3

explained how the expired '085 Patent was invalid under 35 U.S.C. § 101 in view of the Supreme Court's recent decision in *Alice Corp. v. CLS Bank*, 134 S. Ct. 2347 (2014), due to the claiming of non-statutory subject matter. *Id*. at p. 4.

The letter concluded by reminding Plaintiff of the duty to "stop and think" before serving the Complaint and that service of the Complaint in view of the information provided in the letter would be a violation of Rule 11. *Id*. at p. 5. *See* 1993 Advisory Committee Notes regarding 1993 Amendments to Rule 11 ("The rule continues to require litigants to 'stop and think' before initially making legal or factual contentions.").

After Plaintiff ignored the letter and served the Complaint, Defendant sent an e-mail to Plaintiff on July 23, 2015 explaining that no response to the letter was ever received and that Defendant needed some explanation as to how Plaintiff believes there is any basis for liability in view of the information provided in the letter. Robinson Decl., Ex. 6. In a reply e-mail, Plaintiff's counsel indicated that he would have to see if Plaintiff would be willing to share a claim chart, and Plaintiff's counsel did not address any of the invalidity references raised in the letter. Robinson Decl., Ex. 7. The e-mail from Plaintiff's counsel ended with a demand for $55,000 to settle the case. *Id*.

### III.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

The specific conduct of Plaintiff that violated Rule 11 and for which Defendant asks for a decision by the court is as follows:

1. Plaintiff violated Rule 11(b) by signing and filing the complaint without an adequate pre-filing investigation that would have shown that there was no basis to assert a printer patent against a website.

2. Plaintiff compounded the initial violation of Rule 11(b) by serving the Complaint containing infringement allegations that are objectively unreasonable in view of the non-infringement explanation provided to Plaintiff prior to service of the Complaint in Defendant's letter.

3. Plaintiff further violated Rule 11(b) by serving the Complaint containing

allegations based on the '085 Patent, which Plaintiff knew or objectively should have known is invalid in view of the invalidity analysis provided to Plaintiff prior to service of the Complaint in Defendant's letter.

## IV. THE APPLICABLE LEGAL STANDARDS

### A. The Rule 11 Standard[4]

As the Supreme Court recognized in the *Commil* case:

> The Court is well aware that an "industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) (KENNEDY, J., concurring). Some companies may use patents as a sword to go after defendants for money, even when their claims are frivolous. This tactic is often pursued through demand letters, which "may be sent very broadly and without prior investigation, may assert vague claims of infringement, and may be designed to obtain payments that are based more on the costs of defending litigation than on the merit of the patent claims." L. Greisman, <u>Prepared Statement of the Federal Trade Commission on Discussion Draft of Patent Demand Letter Legislation before the Subcommittee on Commerce, Manufacturing, and Trade of the House Committee on Energy and Commerce 2</u> (2014). This behavior can impose a "harmful tax on innovation." *Ibid*…
>
> No issue of frivolity has been raised by the parties in this case. … Nonetheless, it is still necessary and proper to stress that *district courts have the authority and responsibility to ensure frivolous cases are dissuaded. If frivolous cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits. Fed. Rule Civ. Proc. 11*.

*Commil*, 135 U.S. at 1930. (Emphasis added).

Fed. R. Civ. P. 11(b) provides that an attorney who presents a pleading or other paper – whether by signing, filing, submitting, or later advocating it – certifies that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry, the claims and

---

[4] Defendants are also entitled to recover their attorneys' fees pursuant to 35 U.S.C. § 285 ("Section 285"), which authorizes a district court to award a prevailing party in a patent case its full attorneys' fees upon clear and convincing evidence that the case is exceptional. An "exceptional" case is one that stands out from others with respect to the substantive strength of a party's litigating position. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, -- U.S. --, 134 S. Ct. 1749, 1756 (2014). The present case easily satisfies the exceptional case standard. Defendant notes that Plaintiff's conduct could also be sanctioned under 28 U.S.C. § 1927 and/or the Court's inherent powers.

5

other legal contentions presented are non-frivolous, warranted under the law, and supported by facts. Fed. R. Civ. P. 11(b)(2)-(3). In the Fifth Circuit, when determining whether there was a Fed. R. Civ. P. 11 violation, the standard under which an attorney is measured is an objective standard of reasonableness under the circumstances. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1367 (Fed. Cir. 2012).

Rule 11 sanctions should be imposed where a plaintiff presents infringement allegations that are legally baseless. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328-29 (Fed. Cir. 2011) (affirming Rule 11 sanctions where infringement allegations were legally baseless). Similarly, Rule 11 sanctions should be imposed where a plaintiff has brought suit on a patent that it knew or should have known to be invalid. *See, e.g., Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2011 U.S. Dist. LEXIS 66745, *13 (E.D. Wis. June 22, 2011) ("Of course, Rule 11 also allows sanctions if [the plaintiff] knew at the time it filed its lawsuit that the [] Patent was invalid."); *Thermocycle Int'l, Inc. v. A. F. Hinrichsen Sales Corp.*, 1991 U.S. Dist. LEXIS 8550, *7 (S.D.N.Y. June 25, 1991) ("If Thermocycle's attorneys were responsible for commencing a patent infringement action when they knew that their client's patent was invalid, or when they had no reasonable ground to believe in the patent's validity, this would clearly justify the imposition of sanctions under Rule 11."); *see also Hughes v. Novi American, Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984) (upholding dismissal and attorneys' fees pursuant to Section 285 where "suit was brought without a good faith belief in the validity of the patent."); *Mathis v. Spears,* 857 F.2d 749, 751 (Fed. Cir. 1988) (same).

Rule 11 sanctions are particularly appropriate when a plaintiff insists upon a position after it is no longer tenable. *Raylon*, 700 F.3d at 1367. In *Raylon*, several of the defendants sent letters to the plaintiff expressing their concerns that plaintiff's complaints violated Rule 11(b)(2) and Rule 11(b)(3) because, *inter alia*, its infringement positions with regards to elements of the asserted claims were unreasonable. *Id*. at 1365. Despite those warnings from the defendants, the plaintiff continued to press its infringement positions. *Id*. In finding the plaintiff's actions sanctionable under Rule 11, the Federal Circuit confirmed that Rule 11 requires litigants to "stop-

6

and-think" before making legal or factual contentions, and that changes to the rule have emphasized the duty of candor by subjecting litigants to sanctions for insisting upon a position after it is no longer tenable. *Id*. at 1367-69.

Rule 11 sanctions are also appropriate where a plaintiff attempts to stretch unreasonably a patent claim to try to cover a technology to which the patent was not directed. *Eon-Net*, 653 F.3d at 1329. In *Eon-Net*, the patent at issue related to a document processing system for processing information from hard copy documents. *Id*. at 1317-18. The plaintiff in *Eon-Net* attempted to stretch the patent claim to try to cover the processing of information entered on a website. *Id*. at 1319. The Federal Circuit affirmed the conclusion that the written description of the patent at issue defined the invention as a system for processing information from hard copy documents, and found that even though plaintiff's counsel did examine portions of defendant's website, a reasonable pre-suit investigation also requires counsel to perform an objective evaluation of the claim terms when reading those terms on the accused device. *Id*. at 1328-29. The attempt by the plaintiff to stretch the patent claims to try to cover information entered on a website bordered on the illogical and exposed the frivolity of the plaintiff's position. *Id*. at 1329.

### B.     Available Sanctions Under Rule 11

The court may impose an appropriate sanction when a party's conduct violates Rule 11(b). Fed. R. Civ. P. 11(c)(2). Rule 11 sanctions may be set at a level sufficient to deter repetition of such conduct by others similarly situated. *Raylon*, 700 F.3d at 1370. Rule 11 also authorizes a district court to dismiss a case in its entirety where the plaintiff has pursued unfounded claims.[5] Where the offending pleading is the complaint, the district court is also empowered to award the injured party all of its attorneys' fees incurred in defending the action.[6]

---

[5] *Tayr Kilaab Al Ghashiyah v. Frank*, 2008 U.S. Dist. LEXIS 520, *6 (E.D. Wis. Jan. 3, 2008); *Marina Mgmt. Servs. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) ("Dismissal is a legitimate sanction under Rule 11"); *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993); *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979).

[6] *Divane v. Krull Elec. Co.*, 319 F.3d 307, 315 (7th Cir. 2003) (sanctions for filing wholly frivolous complaint are fees "that the defendant spent answering the complaint and defending against it."); *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) ("In a case like this, where the

### V. THE COURT SHOULD IMPOSE RULE 11 SANCTIONS AGAINST PLAINTIFF

#### A. Sanctions Should Be Imposed Because Plaintiff Filed and Served The Complaint Containing Infringement Allegations That Are Objectively Unreasonable

This case is a textbook example of a company that was formed to use "patents as a sword to go after defendants for money, even when their claims are frivolous." *Commil*, 135 U.S. at 1930. Plaintiff first violated Rule 11(b) by *signing and filing* the complaint without an adequate pre-filing investigation that would have shown that there was no basis to assert a printer patent against a website. Plaintiff compounded the initial violation of Rule 11(b) by *serving* the Complaint containing *infringement* allegations that are objectively unreasonable in view of the non-infringement explanation provided to Plaintiff prior to service of the Complaint in Defendant's letter.

Just as in *Raylon*, Plaintiff continues to insist upon an infringement position after it is no longer tenable. Also, just as in *Raylon*, Defendant sent a letter to Plaintiff expressing concerns that service of the Complaint would violate Rule 11(b) because the allegations in the Complaint are unsupportable and objectively unreasonable. Defendant explained to Plaintiff in the letter that Rule 11 requires litigants to "stop-and-think" before making legal contentions, but Plaintiff decided to ignore the letter and proceeded with serving the Complaint that still has the frivolous infringement allegations.

On page 1 of Defendant's letter (Robinson Decl., Ex. 5), Defendant explained the following to Plaintiff:

> PC [(Provide Commerce)] simply does not infringe any claim of the '085 patent. Your complaint mentions the steps of claim 13 of the '085 patent. PC, however, does not practice any of the steps of claim 13 of the '085 patent. Claim 13 requires, among other steps, providing in a page description language file a data string operable of a multimedia device. PC does not provide any such page description language file. Moreover, because PC does

---

original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions.").

> not provide any such page description language file, it also does not perform the other steps of claim 13 of the '085 patent.
>
> The lack of any facts in your complaint only underscores the lack of any infringement by PC, because the complaint does not mention any action performed by PC relating to the steps of the claims. We also note that the '085 patent had expired by Sep. 12, 2014, and the complaint makes no mention of any actions performed by PC prior to that date.
>
> In view of the complete non-infringement of the claims, there can be no reasonable basis for your complaint against PC.

As explained in Defendant's letter, Defendant has never provided a "page description language file" with the contents required by Claim 13 of the '085 Patent. The Complaint specifies that the accused instrumentality is Personal Creations online printing interfaces, but does not explain what those interfaces are or how they relate to the claim. Ostensibly, Plaintiff is attempting to equate the "page description language file" of the claim with a webpage. Just as in *Eon-Net*, however, where the claims at issue could not be stretched beyond their proper boundaries, the claims of the '085 Patent were never intended to cover webpages but rather particular types of files with languages for a printer. Dkt. No. 1, Exhibit A, '085 Patent at col. 3, l. 43 – col. 4, l. 5. Thus, just as in *Eon-Net*, even if Plaintiff's counsel did examine portions of a website, a reasonable pre-suit investigation would have also required Plaintiff's counsel to perform an objective evaluation of the claim terms of the '085 Patent, and there is no reasonable interpretation under which Provide Commerce could be said to have infringed. The pre-filing investigation requirement applies equally to method claims. *See Ultra-Temp Corp. v Advanced Vacuum Sys.*, 189 F.R.D. 17, 25 (D. Mass. 1999).

If Plaintiff had complied with the pre-filing investigation required by Rule 11, it should have been able to allege precisely in the Complaint how the Defendant practiced the asserted claims. The fact that the Complaint was devoid of such material confirms that Plaintiff has failed to do the required Rule 11 investigation. Moreover, even after Defendant sent its letter to Plaintiff explaining that the claims have not been infringed, Plaintiff proceeded to serve the Complaint with the frivolous infringement allegations and without responding to Defendant's letter.

9

### B.     Sanctions Should Be Imposed Because Plaintiff Served The Complaint When It Objectively Should Have Known That The Patent-In-Suit Is Invalid

Plaintiff also violated Rule 11(b) by serving its Complaint when it objectively should have known based on the invalidity analysis provided in Defendant's letter that the claim of the '085 Patent asserted in the Complaint is invalid in view of how it appears the Plaintiff attempts to interpret the claim in the Complaint.  Defendant provided the following three prior art references with the letter: (1) Williams et al., "Mail Facilities in a Multimedia Environment," Hewlett-Packard Journal, April 1994 (Robinson Decl., Ex. 5, Exhibit A ("the Williams article")); (2) Adobe Systems, "The Future of PostScript Language Technology from Adobe Systems," September 1991 (Robinson Decl., Ex. 5, Exhibit B ("the Adobe paper")); and (3) Isle et al., "Multimedia Interface and Method for Computer System," U.S. Patent No. 4,931,950, issued June 5, 1990 (Robinson Decl., Ex. 5, Exhibit C ("the Isle patent")).  Defendant also explained how the claim of the '085 Patent asserted in the Complaint is invalid due to the claiming of non-statutory subject matter.

#### 1.     The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid In View Of The Williams Article

Defendant's letter provided a detailed invalidity analysis based on the Williams article.  On pages 2-3 of Defendant's letter (Robinson Decl., Ex. 5), Defendant explained the following to Plaintiff:

> The first reference we located is an article by Williams et al. titled "Mail Facilities in a Multimedia Environment" (hereinafter "the Williams article").  The Williams article was published in the Hewlett-Packard Journal in April 1994, which is well before the filing date of the '085 patent.  The Williams article describes an actual working product of Hewlett-Packard, which was the HP MPower Mail System.  A copy of the Williams article is attached to this letter as Exhibit A.
>
> The Williams article discusses the use of a "MIME file" that includes both multimedia data and data for printing. (Williams article, pp. 72-73, 75-77).  The content types that can be included in the MIME file are shown on page 76 of the Williams article, and include text, images, audio, and video.  Williams explains that the several different types of multimedia data are

contained in a single file in the MIME format, so that the single MIME file can include text, image data, audio data, and video data. *Id*. at pp. 75-76.

The multimedia data in the MIME file is used to operate a multimedia device. For example, an audio player program can be invoked to play the audio data from the MIME file. *Id*. at p. 72. Importantly, during printing of the MIME file, the audio data is excluded from being printed. *Id*. at p. 73. Williams describes the printing of the MIME file on page 73 as follows:

"**Printing.** Multimedia printing involves decomposing the MIME formatted file into its parts and invoking the HP MPower print action (HP SharedPrint) on each of the parts. … Invoking HP SharedPrint for mail is handled by the shell script mmprint.

Several types of multimedia cannot be printed (e.g., audio files). This is handled by a print action for the unprintable file that maps to the special action **NONE**." (Williams article, p. 73) (emphasis added).

The Williams article, therefore, describes a MIME file that includes both text data and audio data in a single file. The audio data from the MIME file is applied to an audio player to provide audio output. When the MIME file is printed, the MIME file is decomposed into its parts and the print action is invoked on each of the parts, but the multimedia data that cannot be printed (such as the audio data) is excluded from the printing operation. *Id*. at pp. 72-73. The Williams article demonstrates that such operations were known and implemented well before the filing date of the '085 patent.

In view of the invalidity analysis based on the Williams article provided in Defendant's letter, Plaintiff objectively should have known that the claim of the '085 Patent as referenced in the Complaint is invalid. The serving of the Complaint after receiving Defendant's letter, therefore, was a violation of Rule 11(b).

### 2. The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid In View Of The Adobe Paper

Defendant's letter similarly provided a detailed invalidity analysis based on the Adobe paper. On page 3 of Defendant's letter (Robinson Decl., Ex. 5), Defendant explained the following to Plaintiff:

The second reference we located is a paper from Adobe Systems titled "The Future of PostScript Language Technology from Adobe Systems" (hereinafter "the Adobe paper"). The Adobe paper was published in September 1991, which is years before the filing date of the '085 patent. A copy of the Adobe paper is attached to this letter as Exhibit B.

The Adobe paper describes the use of PostScript files and, importantly, includes a section on page 6 titled "The PostScript Language as a Carrier of

11

Multi-Media Information." (Adobe paper, p. 6). The Adobe paper explains that, as of September 1991, the PostScript language could already carry audio information, which allows users to add voice messages to documents. Indeed, on page 6, the Adobe paper states the following:

> "The PostScript language can already carry audio information, as demonstrated by applications for NeXT computers, which allow users to add voice messages to documents." (Adobe paper, p. 6) (emphasis added).

We have obtained textbooks and programs for "NeXT computers" from the early 1990's, which show that the Display PostScript extensions developed by Adobe Systems for NeXT computers included a "playsound" PostScript instruction for playing audio, and also included extensions for controlling a video monitor. As the Adobe paper explains, "[a] 'document' in the PostScript language is therefore an electronic file containing any or all of the following elements: text, line art, scanned or sampled images (photographs), sound and full-motion video." *Id*. at p. 6 (emphasis added). The sound is played while the text portion of the document can be printed. *Id*. The Adobe paper demonstrates that such concepts were known and implemented well before the filing date of the '085 patent.

In view of the invalidity analysis based on the Adobe paper provided in Defendant's letter, Plaintiff objectively should have known that the claim of the '085 Patent as referenced in the Complaint is invalid. The serving of the Complaint after receiving Defendant's letter, therefore, was a violation of Rule 11(b).

### 3. The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid In View Of The Isle Patent

Defendant's letter further provided a detailed invalidity analysis based on the Isle patent. On pages 3-4 of Defendant's letter (Robinson Decl., Ex. 5), Defendant explained the following to Plaintiff:

> The third reference we located is U.S. Patent No. 4,931,950 by Isle et al. titled "Multimedia Interface and Method for Computer System" (hereinafter "the Isle patent"). The Isle patent was issued on June 5, 1990, which is years before the filing date of the '085 patent. A copy of the Isle patent is attached to this letter as Exhibit C.
>
> The software described in the Isle patent interprets commands in files that specify audio messages, text to be printed, and video sequences to be played. (Isle, col. 5, line 34 – col. 9, line 68). The commands in Isle are specified by "@" command markers and, for example, the symbol "@s" is a command to speak text using audio output, and the text is spoken up to a closing "@" symbol in the file. *Id*. at col. 6, lines 3-14; col. 7, line 31 – col. 8, line 68; Table 1. Similarly, the command "@p" in the file specifies text to be

printed, and continues up to a closing "@" symbol. *Id*. at col. 8, lines 5-6; Table 1.

Thus, when a file is opened in the system of the Isle patent, the text between "@s … @" is synthesized and output through a speaker, while the text between "@p … @" is printed by a printer. *Id*. at col. 5, line 34 – col. 9, line 68; Table 1. In other words, the data string between "@s … @" in the file is used to operate the synthesizer and speaker by being applied to control the synthesizer and speaker, while the portion of the data that excludes that spoken text and is between "@p … @" in the file is printed. *Id*. The Isle patent demonstrates that such operations were known and implemented well before the filing date of the '085 patent.

In view of the invalidity analysis based on the Isle patent provided in Defendant's letter, Plaintiff objectively should have known that the claim of the '085 Patent as referenced in the Complaint is invalid. The serving of the Complaint after receiving Defendant's letter, therefore, was a violation of Rule 11(b).

**4.     The Plaintiff Objectively Should Have Known That The Patent-In-Suit Is Invalid Due To Claiming Non-Statutory Subject Matter**

Defendant's letter also provided a detailed invalidity analysis concerning the '085 Patent claiming non-statutory subject matter. On page 4 of Defendant's letter (Robinson Decl., Ex. 5), Defendant explained the following to Plaintiff:

> The Supreme Court's recent decision in *Alice Corp. v. CLS Bank*, 134 S. Ct. 2347 (2014), reaffirmed that patent claims are statutorily invalid under 35 U.S.C. § 101 when they recite nothing more than abstract ideas. The Supreme Court emphasized that claims that merely require generic computer implementations fail to transform an abstract idea into a patent-eligible invention. The claims of the '085 patent are even more deficient than the claims that were at issue in *Alice* and, therefore, are invalid.
>
> Moreover, courts are not waiting until summary judgment motions are filed to invalidate patents under § 101. We urge you to review, for example, the CAFC's September 3, 2014 opinion in *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014). This decision denied patent-eligibility under § 101. While that result is no surprise in view of *Alice*, the vehicle for the decision in the district court was a motion for judgment on the pleadings rather than a summary judgment motion. No claim construction was necessary.
>
> The claims of the '085 patent relate to nothing more than the abstract idea of providing and applying data. Mankind has been providing and applying data since the beginning of time. The Court in *Alice* addressed the argument that 'the introduction of a computer into the claims rendered patentable an invention that otherwise would not have been." 134 S. Ct. at

13

2357. Citing *Gottschalk v. Benson*, 409 U.S. 17 at 67, the *Alice* Court rejected that argument on the ground that computer implementation of an abstract idea "did not supply the necessary inventive concept; the process could be carried out in existing computers long in use." 134 S. Ct. at 2357.

Claim 13 of the '085 patent is even more abstract than the claims at issue in *Alice*, because it does not even mention a computer to implement what is clearly an abstract idea. The '085 patent claims are thus clearly invalid under § 101 and Graham Springs should immediately drop its complaint in view of that invalidity.

In view of the invalidity analysis based on the claiming of non-statutory subject matter as provided in Defendant's letter, Plaintiff objectively should have known that the claim of the '085 Patent as referenced in the Complaint is invalid. The serving of the Complaint after receiving Defendant's letter, therefore, was a violation of Rule 11(b).

## VI. CONCLUSION

As recognized in *Commil*, patent trolls are a tax on innovation. Their frivolous cases clog the courts. Even prior to the Supreme Court's 2014 statement in *Commil, supra,* that "district courts have the authority and responsibility to ensure frivolous cases are dissuaded," the then Chief Judge of the Federal Circuit Court of Appeals published a scathing editorial in 2013 in the New York Times, citing comments by the President of the United States, and encouraging district judges to use Rule 11 against patent trolls:

> Section 285 of the Patent Act, as well as *Rule 11* of the Federal Rules of Civil Procedure, give judges the authority they need to shift the cost burden of litigation abuse from the defendant to the troll. … Judges know the [patent troll] routine all too well, and *the law gives them the authority to stop it. We urge them to do so*."

Randall R. Rader et al., Make Patent Trolls Pay in Court, The New York Times (June 4, 2013) (emphasis added), filed herewith as Exhibit 8 to the Robinson Declaration.

There is no justifiable basis for Plaintiff's frivolous case against Defendant. As such, Defendant respectfully requests that Plaintiff be found in violation of Rule 11 and that Plaintiff's suit be dismissed in its entirety and Defendant awarded all of its attorneys' fees and costs.

Dated:  August 31, 2015

Respectfully Submitted,

<u>/s/  William J. Robinson</u>
William J. Robinson (CA Bar No. 83729)
e-mail: wrobinson@foley.com
Justin M. Sobaje (CA Bar No. 234165)
email: jsobaje@foley.com
Jean-Paul Ciardullo (CA Bar No. 284170)
email: jciardullo@foley.com
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
213.972.4500
213.486.0065

Clyde M. Siebman (TX Bar #18341600)
e-mail: clydesiebman@siebman.com
Siebman Burg Phillips & Smith LLP
Federal Courthouse Square
300 N. Travis St.
Sherman, TX 75090
903.870.0070
903.870.0066

*Attorneys for Defendant*
*Provide Commerce, Inc.*

4843-4035-5110.2

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 31, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system, per Local Rule CV-5(a)(3).

/s/  William J. Robinson

William J. Robinson
